19-3703 Klotz v. Celentano Stadtmauer and Walentowicz, LLP We have Mr. Borson and Mr. Bartel. Mr. Borson? Yes, Your Honor. Scott Borson. I'm here on behalf of Terry Klotz, who's the appellant, and I request... Yeah, just to make things... Well, first of all, how much did you wish to reserve for  Three minutes, please, Your Honor. That's fine. Obviously, there's three issues here. The last issue, whether the district court abuses discretion by denying the motion to amend. I don't think we have many questions on that. Basically, this comes down to the first issue, did the district court properly apply New Jersey's doctrine of necessaries? And did the Equal Credit Opportunity Act preempt the doctrine of necessaries if it does apply? So why don't you begin with that first issue? Yes, Your Honor. Your Honor, the issue is whether there's a conflict between the Equal Credit Opportunity Act and the necessaries doctrine that was created by the New Jersey Supreme Court in 1980 decision. We contend that it does. The whole purpose of that judicial doctrine was to treat a husband and wife... First of all, it only applies to people who are married. Second, it attempts... It was based on the belief that the parties to a marriage consider themselves a single financial unit. The purpose of the Equal Credit Opportunity Act was to dispel that notion, to specifically provide that they would be treated individually. So we have a situation where you have a judicial doctrine that is based on marital status, and two, directly conflicts with the purpose of the Equal Credit Opportunity Act, which was to segregate the people. Now, the practical effect of this is pretty widespread. Before you do the practical effect, where in your complaint do you allege that a creditor discriminated against Ms. Klotz? Your Honor, we did not allege that they discriminated against Ms. Klotz. Specifically, that was in response to their suggestion that they had a legal basis. The letter that was sent, there's no dispute that the letter that was sent that described it as your indebtedness was not for a debt that she incurred. So the issue arose because their defense was, well, we're allowed to do this under this bound case. Okay, who is the creditor? Well, the creditor who discriminated is the hospital itself. The debt collector was... Can a hospital be a creditor under the Equal Credit Opportunity Act? Yes, on the basis of that hospital debt is considered incidental credit and has been covered as an extension of credit. But how do you get around our Reithman case, which says that the providers of professional services, now in that case, it was a law firm, obviously, were not creditors under the ECOA? Well, the only thing I could say, Your Honor, is that there's a case law that supports the idea and also the regulations themselves that suggest that this is incidental credit that would be covered. There's no basis. Once you get to the credit level, there's no basis. There's nothing involved professionally or any sort of learned profession that's involved in the purposes of collecting a debt or establishing or administering that debt. So while the rationale for learned profession exceptions might exist in connection with whether you're disputing the amount of the debt or whether the services should have been provided, those present professional questions. The ministerial acts of billing and collecting on those debts has nothing to do with the professional services. That's something that's done by every business every day. There's nothing unique to professionals that would cause this to be treated any differently than any other. But professionals cannot operate without that overhead type expenses any other business has. So is that not part of the expense? It is part of the expense, Your Honor. But my point is that when you create a learned profession exception to something, it's because you're recognizing that analyzing it might cause you to have to employ a profession to rate a professional. In other words, if I was disputing that the services provided were not necessary by an attorney, that would get into an analysis of their professional qualifications. The bill that they send has nothing, no attributes to it. If I'm not contesting the necessity that led to the bill, if I'm just addressing how they're approaching collection of that bill, there's nothing unique to professionals that would call into question or require any sort of special analysis. That's my point. You're arguing two types. Obviously, there is normally a presumption against preemption. And so you're arguing express preemption and I guess preemption that perhaps is conflict preemption or whatever. But when on express, you got 1691 C of the Equal Credit Opportunity Act. And it says that the act applies to extensions of credit. And it doesn't cover sharing of spousal liability after the debt is incurred. Well, and that's part of the issue here is it's a little bit different than a situation where we're dealing with a bank because this is a judicially created doctrine. So we don't have the normal situation where the bank might ask them to sign what's happening. But the hospital's not extending credit. I mean, the question is something was a service was performed and we're $280 all together. And the question here is, under New Jersey law, you have something called this Doctrine of Necessaries that says that the spouse can be liable in that circumstance for something that's necessary. And I don't see how the act expressly the Federal Act expressly overrides the New Jersey doctrine. Your Honor, I would tend to agree I am relying on conflict preemption, which is basically described when a state law conflicts with federal laws, such that compliance with both state and federal regulations is incomparable. And at a conflict preemption, it's the goal is to facilitate access to credit markets, that's the ECOA, not to affect spousal sharing of liability. Actually, Your Honor, and here's where it comes into the reason that this can affect the purpose of the Equal Credit Opportunity Act as to marital discrimination was to establish them as separate units. And the problem you have here is you've got, in essence, a hidden potential liability under this Necessaries Doctrine. I understand we're only here about $1,580, Your Honor. What if the bill was $50,000? Suddenly, that spouse who did not incur this debt now has a liability created by judicial doctrine that not only affects her ability to obtain credit, but could affect her creditors as well. But the only way to get around this New Jersey doctrine is if the federal law here, the ECOA, somehow preempts the federal law. In other words, you've got to beat the presumption against preemption. And when I look at conflict preemption, it doesn't seem that there is necessarily anything in ECOA that affects the spousal sharing of liability already incurred. Your Honor, what I would suggest is if you look at 12 CFR section 1002.11b, it talks about preempted provisions of state law because this is a conflict preemption. And under that provision, there's two provisions in particular under subsection 1. First is requires or permits a practice or act prohibited by the act. We would suggest that incurring extending liability solely on the basis of the marital status conflicts with the act. The second provision that we would point out is it prohibits the individual extension of consumer credit to both parties to a marriage if each spouse individually and voluntarily applies for such credit. In this situation, the only evidence is that Mr. Klotz went in and obtained services and the credit associated with those services. There's nothing to show that, again, Mrs. Klotz is only being held liable on the basis that she's married to him. He could have gotten this credit on his own. The statute protects applicants and how is Mrs. Klotz an applicant? Well, and the applicant, that raises another issue is whether it's applicants and whether it extends to guarantors or not. How this is set up, it appears to some degree that she's considered a guarantor of this debt, and that's the debate. The Hawkins case, which was the 8th Circuit case that rejected the idea that a guarantor should be considered an applicant, went to the Supreme Court. The 8th Circuit had ruled against it, but at the time there were only eight justices, so it was affirmed by a four to four margin. This court in Silversmith previously had addressed and adopted and said that the regulation that was the subject of the Hawkins case was reasonable and therefore you were going to recognize that provision or that regulation that said that a guarantor should be treated the same way as an applicant. There's no question this is an unusual situation because this isn't a situation where parties are going in and asking for the spouse. This all comes back to a court case that says, look, we're going to extend liability to you. So in that framework, the question becomes a judicial doctrine that simply is based, that applies to no one other than someone who's married, whether or not, and it applies to their financial condition and can have it. Initially when I asked you about who's the creditor and you said the fact that it's incidental, take it out of ECOA coverage. No, your honor, my understanding at least is they label it as incidental credit, but it's still considered credit. It's just considered a different type of credit and I will tell you, so when they label it as incidental credit, there are some provisions that talk in terms of whether what prohibitions or what incidental credit, but they usually, and this goes to my point, they usually deal with issues about whether someone's asked to sign a particular guarantee or not. Again, we're not talking about a situation where there's a guarantee. Keep in mind, this only arises by operation of law. There's no ability to reject this. For instance, what if a spouse didn't want to be liable? Under this judicial doctrine, they cannot exclude themselves. That means whatever the spouse incurs in debt will now become a debt that not only affects the non-treated spouse's credit, but again, it will also affect their creditors. Again, recognizing that we're dealing with a small amount here, but there's no limits on this particular doctrine. As far as it's read, if he had a million dollar bill, she would be liable. How's that affect her ability to get credit, which was the purpose of the Equal Credit Opportunities Act? Isn't that a little far removed from direct causation? We've got an act that is to make sure that women can get credit without their husbands, without being required to get their husband's consent. You're taking it two steps beyond that immediate situation. Isn't that way beyond what the statute was meant to accomplish? Well, Your Honor, respectfully, I don't think I'm talking about the practical impact that if I'm entitled to obtain my own credit, then everything that affects my credit does impact the ability to go out and get my own credit. For instance, if this person... That statement is so vague and so indistinct. I can't imagine that the statute is... I'm almost out of time, Your Honor. Actually, we're beyond 12 minutes. And then we'll go to your opposing counsel. Your Honor, the only thing I can say is let's put it in just very simple terms. Even something as simple as this collection item showing up on her credit report would have an adverse effect on her ability to obtain credit. That's not that far-fetched. Okay. Thank you. Mr. Bartelt? Let me know that for our IT people. I have on my iPad, which I haven't used because I've got the grease on it. I have called in to be admitted to this by my iPad. If they can let me in, then I've got no more battery problems. I'm waiting to be admitted to the meeting on my iPad. Wonderful. Patrick, can you let the know who... I didn't know who the iPad was. Okay. Start video. Right. There you go. All right. Great. I'm not a total klutz. Ready? Yes, Your Honor. Good morning, Your Honor. Larry Bartelt on behalf of the appellee, Solitano, Stott-Meyer, and Lattowitz. I think first I want to address the incidental credit issue. I do agree with your counsel that under the law, this is incidental credit. The important part of incidental credit is there's exceptions to the ECOA application when a credit is deemed incidental credit. Plano's basic argument here is that it's basically a signature rule argument. The fact that we're supposedly, one spouse is applying for credit and we're demanding that the other spouse either apply, be a co-injured, or guarantee the actual loan. However, one of the clear exceptions to incidental credit is that the signature rule is inapplicable. In require the signature or the guarantee of both spouses. That shows that the law is not in conflict with the doctrine of necessaries. I think it's pretty clear from the reading of Regulation 102.3. With that being said, Your Honor, I think the other part that is interesting is the allegations that their applicant or guarantor. In their complaint, they specifically say Plano never guaranteed or agreed to pay for her late husband's debt. So, any argument that she's a guarantor, I think, falls in the face of their own allegations set forth in the complaint. Second, there is two definitions of applicants. And if you look at the Hawkins and Moran case out of the 8th and 7th Circuit and the Bridgemoor case out of the 6th Circuit, we're conflicting of what definition of application should apply. In Hawkins and Moran, they apply the express language of the ECOA. And in Bridgemoor, they apply the definition as set forth in the regulations. It's important that the extension to guarantors, even under the regulation, only extends to Section Regulation 1002.7d, which is a signature rule inapplicable to incidental credit. So, with that being said, I don't think they have standing to even raise ECOA because they're not an applicant and they're not a guarantor. Even if they were an applicant or guarantor, the guarantor would only apply to Section 102.7. And due to the fact that it's incidental credit, the signature rule would be inapplicable. A person who's issuing incidental credit could require, under the ECOA, both parties to a marriage to either co-sign or guarantee a marriage. The preemption argument fails as a matter of law and expressed the language of both the statute and the regulations. With that being said, I would like to move on to the doctrine of necessaries. I think it's pretty clear from the case law that medical debt is a necessary. No, but then the question really becomes, the bottom line is, does the ECOA in some way have conflict preemption over the 1980 case of the New Jersey Supreme Court that talks about the doctrine of necessaries? And that's the point I was making earlier, Judge. There is no conflict. As I stated, because it's incidental credit, the grantor of incidental credit can require both spouses to be joint applicants or to guarantee a loan before granting it. It's not much different than what the New Jersey doctrine of necessary also does. So there's nothing to say that a creditor cannot require an incidental credit situation for a spouse to guarantee a loan of another spouse. So I think from the conflict preemption, I think it fails as a matter of law. Now I want to basically, if I can, turn to the doctrine of necessaries. I think the whole issue and argument regarding the doctrine of necessaries is that as the collector for the creditor, we did not take the steps necessary to establish that whether Peter Klotz, the husband of the plaintiff, had an estate or had assets at the time of his death to pay this bill. Interestingly, there's no assertion in their complaint, or in their amended complaint, that there was assets for us to attempt to collect from Peter Klotz. So I think that's one important point. The second is, we also basically... The argument would be that the, was there an attempt to exhaust collection efforts against either, obviously, Mr. Klotz, who's now deceased, or his estate? That's correct. And like I said, what we did was, I think, a timeline. The service happened in May 31st, 2017. The first letter, or the letter that was attached from my clients, was January 1st, 2018. So we're talking approximately 18 months there. During that time, there was collection efforts. We were unable to locate an estate. We filed a letter to... Wait a minute. You said May 31st of 17? It was a service date. And then January of 18? Correct. So that would be eight months, not 18. I'm sorry. Yes, you're correct. Eight months. But even with that being said, we did send a letter to the Bergen County Circuit Court to see if an estate was opened in Peter Klotz's name, which it was not. So I think we took the steps necessary to try to determine whether there is assets for payment of the $1,580 debt. I think the lack of some evidence is also important here, and the lack of pleading. As we sit here today, a couple years later, this debt is still outstanding. They were placed to notice that the debt was outstanding. If the estate did have the funds, the debt should have been paid under New Jersey state law. So with that being said, I think we provide it based upon the lack of fact that there's no assertion that there is actual assets for us to attempt to collect from Peter Klotz, because it's our position there is none. There it is our right to try to collect under the doctrine necessaries from the wife. I did notice in the complaint that I believe the opposing counsel and the plaintiff was talking about burdenship a little bit. I think it's important. If we were to file a suit to attempt to collect under the doctrine necessaries, the burden will be on us to establish basically the two elements that it was a necessity and that we attempted to extinguish and seek payment from the actual applicant creditor at the time we've sent the letter. However, this is an FDCPA case. The burden doesn't sit with us. It sits with the appellant to establish that the information within this letter is false, deceptive, or misleading. So for them to establish that, they need to establish that the doctrine of necessary was not applicable and we did not have a right to collect under the doctrine of necessaries. Plaintiff's complaint and his amended complaint willfully fails at doing that. Again, there's no assertion that there is actual any assets because there is none to pay this debt, which would allow us to seek collection from Ms. Klotz. The one concern here is there's an allegation. The only real opportunity is looking at the FDCPA to, we can take the necessary steps available to us to make this determination. Before we start, my client starts collecting under the doctrine of necessaries without any information, all the way to, of no estate or no assets would be the scheme is to not even attempt to collect the debt, but just to file suit. And I don't think that would follow the purpose of the FDCPA and would lead to unnecessary lawsuits filed in instances where we're attempting to collect under the doctrine of necessaries. Any questions of my colleagues? No. Okay. Thank you very much, Mr. Bartel. Mr. Borson, I think you have three minutes. Yes, Your Honor. Thank you. Here's addressing the signature rule. And here's the point. He said, look, we would have the right, because it's incidental credit, we would have the right to demand a signature from the spouse. That may be true. The problem we have here is there is, it also implies that the spouse could refuse. That's, there's no opportunity here for a spouse to refuse the signature. It's just created a liability for that person with no action and no right to reject the credit on their part. That's what the doctrine of necessaries is about. Both spouses are liable for necessary expenses incurred by either spouse in the course of the marriage. And medical expenses are explicitly covered by this doctrine. I agree, Your Honor. But in the context of the Equal Credit Opportunity Act, which attempts to segregate the marital unit into two separate people with the separate credit, if it preempts, if it preempts, and our argument is that it conflicts, and that the Equal Credit Opportunity Act specifically addresses, and I read you the specific provisions of the CFR, that this provision does not allow for this, any spouse to reject credit that they don't want that would have an adverse effect on their stand, their ability to obtain credit in their own name, either by terms of seeking credit and having a collection item appear on their credit report, or even just report it as a liability. So the problem, oftentimes what happens is you have this new law into it, and I don't see how that regulation necessarily covers what the text of the statute seems to say in terms of not being involved, not preempting a New Jersey doctrine. Well, I understand, Your Honor, but my point is that there is a specific provision, and to put it simply, the ECOA in regards to the issue of marital status was an attempt to split the credit between the parties to that marriage. The New Jersey judicial doctrine says it's based on the belief that they should be treated as a single financial unit. That's the conflict, whether you look at the CFR or not, but there's a conflict here because you have a credit situation that affects the other spouse solely on the basis of marriage. The other issue, Your Honor, is just briefly, just two other issues. One is whether or not, I mean, the whole idea, the only thing that the case says is that you have to pursue the remedies against the first person, the person who's liable on the debt before you can pursue the second person. What the details of that are not laid out in the case, what that means, whether you can jump to the conclusion that it's this person's indebtedness without some showing or at least explanation to the spouse, whether or not the statement that it's your indebtedness without any explanation or examination of that, and then finally, the issue relating to the amended complaint, which was the issue of whether or not there was, what dollar amount. As I mentioned, I don't think we have any questions on the amended complaint. All right. I apologize. No problem. Thank you very much, and I thank both you and Mr. Bartel for your patience this morning and for being with us, and we'll take the matter under advisement.